IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TEODITA V. TACAS,

        Plaintiff,               No. CIV S-09-2144 EFB

   vs.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

        Defendant.        <u>ORDER</u>

_____/

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  For the reasons discussed below, the court grants defendant's motion in part and grants plaintiff's motion in part.

I. <u>BACKGROUND</u>

       Plaintiff, born May 6, 1959, applied for DIB on August 2, 2006.  Administrative Record ("AR") 74-76.  Her application alleged that she had been disabled since August 31, 2005.  *Id.* at 74.  Plaintiff's application was denied initially and upon reconsideration, and plaintiff requested an administrative hearing.  *Id.* at 8.  On May 29,2008, a hearing was held before administrative law judge ("ALJ") Laura Speck Havens.  *Id.*  Plaintiff was represented by counsel at the hearing, ////

1

and testified at the hearing, along with vocational expert Stephen B. Schmidt. *Id.* Also present at the hearing were Mr. Bomatia, an interpreter, and Nellie Remley, a hearing assistant. *Id.* at 22.

The ALJ issued a decision on September 29, 2008, finding that plaintiff was not disabled.[1] *Id.* at 8-18. The ALJ made the following specific findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since August 31, 2005, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairment: degenerative disc disease (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828, n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

\*\*\*

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), with an ability to sit, stand or walk up to 6 hours each in an 8 hour workday and with a limitation to occasional bending or stooping.

\*\*\*

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on May 6, 1959 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has a marginal education and is apparently unable to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

\*\*\*

11.  The claimant has not been under a disability, as defined in the Social Security Act, from August 31, 2005 through the date of this decision (20 CFR 404.1520(g)).

*Id.* at 8-16.

Plaintiff requested that the Appeals Council review the ALJ's decision.  However, on June 4, 2009, the Appeals Council denied review, leaving the ALJ's decision as the "final decision of the Commissioner of Social Security."  *Id.* at 1-4.

Plaintiff contends that the ALJ erred in (1) rejecting the opinions of her treating physician without a legitimate basis for doing so; (2) failing to assess plaintiff's residual functional capacity (RFC) and failing to properly question the vocational expert ("VE").  Dckt. No. 20 at 4.

////

////

3

II.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278  F.3d 947, 954 (9th Cir. 2002).

III.  ANALYSIS

A.      Rejection of Medical Opinions

Plaintiff contends that the ALJ erred in rejecting her treating physician's opinion without a legitimate basis for doing so.  Moreover, plaintiff argues, the ALJ erred in rejecting the opinion of Karrie Gonzales, a physical therapist who evaluated plaintiff.

An ALJ may reject the contradicted opinion of a treating physician only for "specific and legitimate" reasons supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). This test is met if the ALJ sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states his interpretation of the evidence, and makes a

1   supported finding. *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir.1989).  Absent specific

2   and legitimate reasons, the ALJ must defer to the opinion of a treating or examining professional.

3   *Lester*, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence,

4   is insufficient to reject the opinion of a treating or examining professional.  *Id.* at 831.

5          Plaintiff argues that the ALJ erred by rejecting the opinion of Dr. Gregorious, plaintiff's

6   treating physician and surgeon.  Dckt. No. 20 at 16.  Dr. Gregorious began treating plaintiff in

7   September 2005, performed surgery on her in October 2005, and continued to treat her through

8   the date of her hearing.  *Id.*  He advised plaintiff on multiple occasions to apply for Social

9   Security disability because he believed that she is "completely, totally, and permanently disabled

10  because of her lumbar spine condition."  *Id.*  (citing AR 256); *see also* AR 254, 283.  Dr.

11  Gregorious opined in a 2008 Physical Capacity Report that plaintiff could lift or carry up to five

12  pounds; could not use her hands for repetitive pushing and pulling of arm controls; was limited

13  to occasional reaching; was precluded from bending, squatting, or climbing; would not be able to

14  perform repetitive movements such as pushing and pulling leg controls with her feet; and was

15  precluded from work involving unprotected heights and moving machinery.  *Id.* (citing AR 282).

16         Similarly, plaintiff contends that the ALJ erred in rejecting the opinion of plaintiff's

17  physical therapist, Kerrie Gonzales.  Gonzales opined that plaintiff could never lift, carry, push,

18  pull, climb, stoop, kneel, crouch or crawl, and that she could only occasionally sit, balance,

19  handle, or finger.  AR 236.

20         Regarding Dr. Gregorious' and Ms. Gonzales' opinion, the ALJ wrote:

21         As for the opinion evidence, reduced weight is given to the various comments in
           the file by Dr. Gregorious.  On December 19, 2005 he wrote that she "cannot
22         return to work as a dietary aide," based on the claimant's report of 5/10 lumbar
           pain and stiffness with flexion (Exhibit 5F, page 7).  Such a conclusion is on a
23         matter reserved to the Commission, and there is no explanation as to how the
           doctor reached this conclusion.  It is also contradicted by notes just two weeks
24         earlier that indicate she was "ambulating and doing well" with no radicular pain
           (Exhibit 5F, page 14).  On June 22, 2006 Dr. Gregorious noted that while the
25         lumbar fusion was "solid," the claimant reported pain which "prevents her from
           working," and he did not feel she could return to work and advised her to apply
26         for Social Security Disability once her State disability expired (Exhibit 5F, page

2).  This opinion appears to be based solely on the subjective report of the claimant who is not entirely credible, and he fails to explain why she could not return to work.

On February 12, 2007 he wrote that the claimant was "totally, completely, and permanently disabled" based on rather benign findings.  Despite this assertion, he did not change her pain medication, did not pursue any additional treatment options, and instead planned on seeing her every 6 months.  It would appear that the doctor is simply advocating for the claimant, making broad assertions about her work capacity without supporting it with objective findings.

Dr. Gregorious himself appears to question the claimant's report.  He was "uncertain" why she was having radicular symptoms on August 3, 2006, at which time he ordered an MRI, which again confirmed everything was in place.  He noted normal resistive strength, negative straight leg raising, normal cervical spine range of motion, but nonetheless again stated that he did not think she could return to work.  Once again, I reject this opinion, as it too is based on the subjective report of the claimant and not the objective findings.

There is also an indication that the claimant embellishes in her report to Dr. Gregorious.  Notes from an (sic) different provider dated June 9, 2006 indicate that examination of her back and extremities was normal, with no report of pain, but that same day Dr. Gregorious noted she was doing poorly with numbness in her thigh (Exhibit 4F, page 19, 11F, page 7).  She also said told (sic) Dr. Gregorious on September 29, 2006 that pain medication did no good (contradicting her hearing testimony) and that she could not lift anything at all (again, contradicting her hearing testimony that she can lift up to 15 pounds).

I have also considered the opinion of physical therapist Kerrie Gonzales and give it minimal weight.  It does not appear to be based on a longitudinal treatment history, and portions of the opinion, including the preclusion from lifting, are contradicted by the claimant's own testimony.  Additionally, as a therapist, she is considered an "other source" of medical information, rather than an "acceptable" medical source under 20 CFR 404.1513.  Thus, I do not give the same weight to the opinion of a therapist that I would give to that of a licensed physician.

*Id.* at 16-17.

Thus, the ALJ has identified a number of specific reasons for rejecting Dr. Gregorious'

opinion that plaintiff was disabled, including: 1) Gregorious gave no explanation as to why

plaintiff could not return to her job as a dietary aide; 2) his opinion is contradicted by some of

his notes indicating plaintiff's lumbar fusion was solid and that she was doing well with no

radicular pain; 3) his opinion seemed to be based solely on plaintiff's non-credible subjective

complaints, and indeed, some of his notes suggested that he did not find plaintiff's complaints

credible; 4) despite his opinion of disabling pain in one treatment record, he did not change her

pain medication or recommend any more treatment; 5) plaintiff's complaints to Gregorious seem embellished.

Plaintiff argues that the first reason, that the doctor gave no explanation as to why plaintiff could not return to her job as a dietary aide, is contradicted by Gregorious' April 2006 treatment notes stating, "I do not think that she can do the bending, stooping and lifting in her job." *See* AR 252.  Although the ALJ may have overlooked this statement, her other reasons for rejecting Dr. Gregorious' opinion are adequate.

Plaintiff takes issue with the legitimacy of the ALJ's second reason, that Dr. Gregorious' opinion was contradicted by some of his treatment notes.  Plaintiff claims that the ALJ was "less than accurate in [her] treatment of the record" because the ALJ did not point out that the treatment note, although stating that plaintiff was doing well and had no radicular pain in her right leg, also stated that her spine was still stiff and sore. *See id.* at 207.  But some stiffness and soreness a mere month after plaintiff's operation, when she otherwise appeared to be doing well, does not undermine the ALJ's credibility finding as to Dr. Gregorious' conclusion that plaintiff is disabled.

Plaintiff argues that the medical records document her increasing pain and treatment. She details a number of medical records in support of her claim that she is disabled.  She also argues that the ALJ misinterpreted Dr. Gregorious' notes in finding that he seemed not to believe plaintiff's subjective complaints.  But, although plaintiff may disagree with the ALJ's interpretation of the evidence, this court must defer to the ALJ's conclusion as long as it is supported by substantial evidence and is free of legal error.  This court may not independently re-weigh the medical evidence.

Finally, plaintiff notes that the ALJ did not specifically mention Dr. Gregorious' 2008 Physical Capacity Report, wherein the doctor opined that plaintiff had a number of specific physical limitations.  But, as explained above, the ALJ provided adequate reasons for rejecting the doctor's overall opinion as to plaintiff ability to perform light work as defined in the

1   regulations.  There is no requirement that the ALJ specifically list each of the doctor's rejected

2   opinions in his written decision.

3          Neither was the ALJ's rejection of Ms. Gonzales' opinion as to disability erroneous.  As

4   a physical therapist, Gonzales is not categorized as an "acceptable medical source" but as an

5   "other source."  *See* SSR 06-3p.  Therefore, as the ALJ noted, her testimony was not entitled to

6   the same weight as a physician's opinion.  The ALJ properly rejected her opinion for two

7   reasons: it was not based on a longitudinal record of treatment, and portions of Gonzales'

8   opinion, including the preclusion from lifting, were contradicted by plaintiff's own testimony.

9   Plaintiff challenges the second reason as improper, arguing that even though she testified that

10  she could lift twenty pounds at the hearing, she did not mean that she could lift that much weight

11  all day in a competitive work environment.  Thus, she argues, testimony is not inconsistent with

12  Gonzales' opinion that plaintiff was limited to lifting only up to five pounds.  Nonetheless, the

13  conflict still exists and plaintiff's attempt to lessen its significance with that explanation does not

14  render the conflict nonexistent.  There is adequate evidence to support the ALJ's credibility

15  finding as to Ms. Gonzales' opinion.  Furthermore, plaintiff does not explain why the ALJ's first

16  reason alone, that Gonzales did not base her opinion on a longitudinal record of treatment, is not

17  legally sufficient to reject Gonzales' testimony.  Therefore, the Commissioner is entitled to

18  summary judgment as to this claim.

19         B.     VE's Testimony

20         Plaintiff also claims that the ALJ failed to credit the VE's testimony in response to the

21  hypothetical which accurately reflected her limitations.  Hypothetical questions posed to a

22  vocational expert must set out all the substantial, supported limitations and restrictions of the

23  particular claimant.  *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical

24  does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national

25  economy the claimant can perform has no evidentiary value.  *DeLorme v. Sullivan*, 924 F.2d

26  841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical

questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. *Embrey v. Bowen*, 849 F.2d 418, 422-23 (9th Cir. 1988). Here, plaintiff argues that the ALJ should have credited her treating physician's opinion and her physical therapist's opinion, and therefore should have assessed a different RFC and should have posed a different hypothetical to the VE. The court has already rejected these arguments. The hypothetical posed to the VE was properly based on the ALJ's assessed RFC findings.

However, plaintiff also correctly argues that the VE's testimony was not consistent with the Dictionary of Occupational Titles (DOT). The VE testified that a person of the plaintiff's age with a sixth grade education in the Philippines, who was illiterate in English and had the physical functional restrictions assessed by the ALJ, could perform jobs in the national economy. AR 39-40. Specifically, he testified that the person could perform the "light" jobs of assembly, laundry worker, and semi-conductor worker.[2] *Id.* at 40.

Plaintiff contends that she cannot perform these jobs because they all require reasoning level two, and two of the jobs require language level two.

Language level two is defined as:

> Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation.

DOT, Appx. C. Defendant concedes that plaintiff is not capable of this level of reading, but contends that plaintiff can perform the job that does not require language level two, that is, the job of laundry worker. However, the laundry worker job requires reasoning level two, which is defined as:

////

---

[2] As plaintiff's attorney noted at the hearing, if plaintiff were limited to sedentary work, given her age, illiteracy, and unskilled past work, the GRIDS would direct a finding that she was disabled.

1   Apply commonsense understanding to carry out detailed but uninvolved written
2   or oral instructions.  Deal with problems involving a few concrete variables in or
    from standardized situations.

3  *Id.*  The ALJ found that plaintiff was illiterate in English.  Indeed, the ALJ used Ilcano

4  interpreters to communicate with plaintiff throughout the hearing.  AR 22-38.  The record shows

5  that plaintiff is precluded from performing jobs involving level two reasoning because she

6  cannot read detailed but uninvolved instructions in English.  Therefore, this case must be

7  remanded for the limited purpose of obtaining VE testimony to determine whether plaintiff can

8  perform jobs that exist in significant numbers in the national economy.

9  IV.  CONCLUSION

10     The court finds that plaintiff cannot perform the jobs identified by the VE at her hearing

11  and by the ALJ in her decision.  Therefore, it is hereby ORDERED that:

12     1.  Plaintiff's motion for summary judgment is granted in part and denied in part;

13     2.  The Commissioner's cross-motion for summary judgment is granted in part and

14  denied in part;

15     3. The Clerk is directed to enter judgment in plaintiff's favor; and

16     4.  The case is remanded for the limited purpose of determining whether plaintiff can

17  perform jobs that exist in significant numbers in the national economy.

18  DATED:  March 31, 2011.

19
20                              EDMUND F. BRENNAN
                               UNITED STATES MAGISTRATE JUDGE
21
22
23
24
25
26